IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMAL FADEL,                                  )
                                              )
                Petitioner,                   )
                                              )
        vs.                                   )    Civil Action No. 3:26-cv-00625
                                              )    Judge Stephanie L. Haines
WARDEN OF MOSHANNON VALLEY ICE                )
PROCESSING CENTER, *et al.*,                  )
                                              )
                Respondents.                  )

**MEMORANDUM OPINION**

Jamal Fadel ("Petitioner") is an immigration detainee who submitted a Petition for Writ of

Habeas Corpus on April 7, 2026. ECF No. 1. In the Petition, Petitioner challenges his lengthy

immigration detention and seeks an order requiring a bond hearing before an immigration judge at

which the Government bears the burden to demonstrate that he should remain detained. *Id.* at ¶

106. For the reasons that follow, the Petition will be conditionally granted.

I.    **BACKGROUND**

Petitioner is a Sahrawi national[1] and citizen of Morocco who alleges he fled persecution

by Moroccan police and security forces because he advocated for the self-determination of the

Sahrawi people. *Id.* at ¶¶ 21-23. Petitioner entered the United States without admission or parole

on December 3, 2023. *Id.* at ¶ 23. On August 25, 2025, he was detained by the Department of

Homeland Security and placed in the custody of Immigration and Customs Enforcement. *Id.* at ¶

26. Petitioner applied for and was granted asylum on December 18, 2025, after an immigration

---

[1] The Sahrawis are an ethnic group native to Western Sahara. *Backgrounder: Sahrawi Refugees and Western Sahara*, U.S. COMMITTEE FOR REFUGEES AND IMMIGRANTS, https://refugees.org/sahrawi-refugees-and-western-sahara/ (last visited May 29, 2026).

judge ("IJ") determined that he had established past persecution and a well-founded fear of future persecution. *Id.* at ¶¶ 33-34. On January 8, 2026, the Government appealed the asylum grant to the Board of Immigration Appeals ("BIA"). *Id.* at ¶ 35.

Since the initiation of his detention in August of 2025, Petitioner has sought bond from an IJ once. In response to his initial habeas petition, the first bond motion was granted on January 29, 2026. *See* 3:25-cv-00538-SLH-CBB, ECF No. 19. Petitioner's bond hearing took place on February 9, 2026, and bond was denied because Petitioner failed to establish that he was not a risk of flight and not a danger to the community. ECF No. 9-1. Petitioner now files a second habeas petition and seeks another bond hearing based on a prolonged detention theory with the Government bearing the burden of proving by clear and convincing evidence that continued detention was necessary. ECF No. 1.

## II.    DISCUSSION

Petitioner initially asserted that he was detained under 8 U.S.C. § 1226(c). Respondents disputed that characterization and Petitioner concedes in his reply that his detention is not currently governed by Section 1226(c). Petitioner's remaining argument is that his continued detention has become constitutionally unreasonable because he has been detained since August of 2025 without the Government ever bearing the burden to justify continued detention. In support, Petitioner points to the IJ's grant of asylum, the Government's pending appeal of that grant, the uncertain timeline for review of the appeal, plus the continued length of his detention. The Government responds that application of the *German Santos* factors shows that Petitioner's detention has not been unreasonable and that there is no basis to order a second bond hearing.

### A. Exhaustion of administrative remedies does not bar review.

Respondents do not argue that the Petition should be denied for failing to exhaust

administrative remedies. Nevertheless, although Section 2241 does not include an express statutory exhaustion requirement, courts generally require immigration detainees to exhaust available administrative remedies before seeking habeas relief. *See Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996). That requirement, however, is prudential rather than jurisdictional and may be excused where exhaustion would be futile. *See Duvall v. Elwood*, 336 F.3d 228, 234 (3d Cir. 2003) ("[W]here exhaustion is not clearly mandated by statute, a futility exception exists."); *Chajchic v. Rowley*, No. 1:17-CV-457, 2017 WL 4401895, at *4 (M.D. Pa. July 25, 2017), *report and recommendation adopted*, 2017 WL 4387062 (M.D. Pa. Oct. 3, 2017).

Here, the Court will not deny the Petition on exhaustion grounds. Petitioner's present claim is not that the IJ incorrectly weighed the evidence at his prior bond hearing but rather that his continued detention has become constitutionally unreasonable and that due process now requires a new hearing at which the Government bears the burden of justifying continued detention. That is a constitutional claim for habeas relief, not an ordinary request for discretionary bond redetermination. Moreover, Petitioner was previously denied ordinary custody review because Respondents asserted that he was subject to mandatory detention under Section 1225(b), an interpretation that courts have roundly rejected in related cases. *See, e.g., Mirdjalilov v. Warden of Fed. Det. Ctr. Philadelphia*, No. 2:25-CV-7068, 2026 WL 184249, at *5 n.6 (E.D. Pa. Jan. 23, 2026) (collecting cases). Under these circumstances, and given the Government's failure to raise exhaustion as a basis for dismissal, the Court concludes that prudential exhaustion does not bar review.

## B. Petitioner is entitled to a new bond hearing due to prolonged detention.

It is undisputed that Petitioner received a bond hearing under Section 1226(a) on February 9, 2026, and that bond was denied because Petitioner failed to establish that he was not a danger

3

to the community and not a flight risk. ECF No. 9-1. Petitioner has now been detained for more than nine months. Thus, while Petitioner's detention may have been permissible when bond was initially denied, the question now is whether continued detention without the Government ever bearing the burden to justify detention has become constitutionally unreasonable.

The Third Circuit has not squarely decided when, if ever, due process requires a new bond hearing for a detainee held under 8 U.S.C. § 1226(a) after an initial bond hearing. *Borbot v. Warden Hudson Cnty. Corr. Fac.*, 906 F.3d 274, 280 (3d Cir. 2018) ("We therefore need not decide when, if ever, the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing in order to conclude that [petitioner's] due process rights were not violated."). Put another way, the Third Circuit did not impose an absolute bar to a second bond hearing in every Section 1226(a) case but rather, it left open whether additional process may be required where the facts show that continued detention has become constitutionally unreasonable despite an earlier bond hearing. *See id.* The Court also notes that, to the extent the Third Circuit held that the duration of detention alone generally cannot sustain a due process challenge under Section 1226(a), that holding did not involve an alien who was initially subjected to unlawful detention under Section 1225(b) and obtained a bond hearing only through habeas relief. *Id.* at 276-77, 279.

At least one court within this District has likewise recognized that *Borbot* does not categorically foreclose a second bond hearing in prolonged detention cases.[2] In *Gonzalez v Oddo*, the court applied the *German Santos* factors and concluded that continued detention had become unreasonable, requiring a second bond hearing at which the Government would bear the burden. No. 3:25-cv-424, 2026 WL 797423, at *5-6 (W.D. Pa. Mar. 23, 2026).

In *German Santos v. Warden Pike Cnty. Com Fac.*, the Third Circuit articulated a

---

[2] Other Courts of Appeal are split on this question and the Supreme Court has not directly addressed the issue either. *P.M. v. Joyce*, No. 22-CV-6321 (VEC), 2023 WL 2401458, at *3 n.6 (S.D.N.Y. Mar. 8, 2023) (collecting cases).

framework for determining when detention under 8 U.S.C. § 1226(c) becomes unreasonable under the Due Process Clause of the Fifth Amendment. 965 F.3d 203, 210-11 (3d Cir. 2020). The Third Circuit explained that "when detention becomes unreasonable, the Due Process Clause demands a hearing." *Id.* at 210. In that context, the required hearing is a bond hearing before an IJ, at which the Government bears the burden of proving by clear and convincing evidence that continued detention is necessary to prevent flight or danger to the community. *Id.* at 213-14.

Although *German Santos* involved detention under Section 1226(c), courts besides the *Gonzalez* court have applied its due process analysis in other prolonged detention contexts. *See, e.g., Maksaddzhon A. v. Pittman*, No. 25-13734, 2025 WL 3648710, at *2 (D.N.J. Dec. 17, 2025) (collecting cases applying *German Santos* to prolonged detention under Section 1225(b)); *A.J.R. v. Rokosky*, No. 25-17279, 2026 WL 592136, at *2-3 (D.N.J. Mar. 3, 2026) (applying *German Santos* where petitioner had previously received a Section 1226(a) bond hearing). The Court finds the *German Santos* framework useful here because Petitioner's detention has become lengthy and, in practical effect, resembles mandatory detention despite the nominal availability of Section 1226(a) custody review.

Accordingly, the Court will apply the *German Santos* factors to determine whether Petitioner's continued detention has become unreasonable. That inquiry is "highly fact-specific . . . ." *German Santos*, 965 F.3d at 210. The relevant factors include: (1) the duration of detention; (2) the likelihood of continued detention; (3) the reasons for any delay; and (4) the conditions of confinement. *Id.* at 211. The Court addresses each factor in turn.

### 1. Duration

The first and "most important" factor is the duration of detention. *Id.* Although the Third Circuit declined to adopt a bright-line rule for when immigration detention becomes unreasonable,

six months has repeatedly served as a meaningful benchmark in immigration detention cases. In *Demore v. Kim*, the Supreme Court upheld detention of approximately six months as only "somewhat longer than average." 538 U.S. 510, 530-31 (2003). And in *Zadvydas v. Davis*, although addressing detention under Section 1231 after a final order of removal, the Supreme Court treated six months as the period presumptively reasonable before continued detention required further justification. 533 U.S. 678, 701 (2001). The Third Circuit has also recognized that detention lasting between six months and one year may become constitutionally suspect. *See Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469, 478 (3d Cir. 2015). While these cases do not establish a fixed six-month rule here, they confirm that Petitioner's approximately nine-month detention is sufficiently lengthy to weigh in favor of relief.

Here, Petitioner has been detained since August 25, 2025—more than nine months as of the date of this writing. Petitioner received a bond hearing on February 9, 2026, but at that hearing he bore the burden of proving that he was neither a danger to the community nor a flight risk. He has remained detained since then. The duration of Petitioner's detention is substantial, and it weighs in favor of granting relief. This conclusion is reinforced by the current posture of Petitioner's removal proceedings. Unlike the Government's cited cases in which proceedings were moving toward imminent removal, Petitioner has already prevailed before the IJ on his application for asylum. The Government has appealed that grant, but there is no clear indication of when the BIA will resolve the appeal. Thus, Petitioner's continued detention is not tied to an imminent removal date.

### 2. Likelihood of continued duration

The second factor is whether the detention is likely to continue. *German Santos*, 965 F.3d at 211. When removal proceedings "are unlikely to end soon, this suggests that continued detention

without a bond hearing is unreasonable." *Id.* This factor also favors Petitioner. The BIA has not yet issued a briefing schedule for the Government's appeal of the IJ's asylum grant nor have Respondents identified any concrete timeline for resolution of the appeal. Instead, they principally dispute Petitioner's characterization of the appeal as frivolous. *See* ECF No. 9 at 10. Whether or not the Government's appeal is frivolous, the relevant point for this factor is that the appeal remains pending, no briefing schedule has issued, and the date of final resolution is uncertain. Continued detention is therefore likely to last for an additional, indeterminate period.

### 3. Reasons for delay

The third factor concerns the reasons for delay, including whether either party has caused unnecessary delay through continuances, careless errors, or bad-faith conduct. *German Santos*, 965 F.3d at 211. Courts should not hold a detainee's good-faith pursuit of immigration relief against him, even if his applications or appeals prolong the proceedings, because doing so would effectively punish him for pursuing available legal remedies. *Id.* At the same time, Government delay does not require a finding of bad faith to become relevant because detention may become unreasonable even where the Government has handled the proceedings reasonably. *Id.*

Here, this factor favors Petitioner. Petitioner is not responsible for the current delay. The IJ granted his asylum application on December 18, 2025. ECF No. 1 ¶¶ 33–34. The Government then appealed that grant. Petitioner should not be penalized for the fact that he prevailed before the IJ and now remains detained while the Government pursues appellate review. Nor have Respondents identified any conduct by Petitioner that has unnecessarily delayed the BIA proceedings. On this record, the delay is attributable to the ordinary appellate process and the Government's decision to appeal the asylum grant, not to dilatory conduct by Petitioner.

### 4. Conditions of confinement

The fourth factor is whether the conditions of confinement are meaningfully different from criminal punishment. *German Santos*, 965 F.3d at 211. The parties have not submitted evidence concerning Petitioner's specific conditions of confinement. It is undisputed, however, that Petitioner is detained at the Moshannon Valley Processing Center ("MVPC"). Further, a court in this District previously recognized that conditions at MVPC may resemble prison-like confinement. *See, e.g.*, *C.B. v. Oddo*, No. 3:25-cv-00263, 2025 WL 2977870, at *7 (W.D. Pa. Oct. 22, 2025). And, as with any civil immigration detention, Petitioner is not free to leave. In the absence of a more developed record, this factor weighs at least somewhat in Petitioner's favor.

### 5. Balance of factors

Considering the *German Santos* factors together, the Court concludes that Petitioner's continued detention has become constitutionally unreasonable. Petitioner has been detained for more than nine months. He has already received an IJ's grant of asylum. The Government's appeal remains pending before the BIA, no briefing schedule has issued, and there is no clear timeline for resolution. The present delay is not attributable to Petitioner. And Petitioner remains confined at MVPC under conditions that, at least in practical effect, resemble penal detention.

The Court does not hold that every Section 1226(a) detainee who previously received a bond hearing is automatically entitled to a second hearing once detention reaches a particular length. Nor does the Court review the discretionary merits of the IJ's prior bond denial. Rather, under the specific circumstances presented here, continued detention without any hearing at which the Government bears the burden of justifying detention violates the Due Process Clause. Petitioner is therefore entitled to a new bond hearing at which the Government must prove, by clear and convincing evidence, that continued detention is necessary because Petitioner poses a

danger to the community or a risk of flight.

### III.    CONCLUSION

For the reasons set forth herein, the Petition will be conditionally granted. An appropriate Order follows.

### ORDER

**AND NOW**, this 8th day of June, 2026, for the reasons stated in the Memorandum Opinion, it is hereby **ORDERED** that:

1.  The Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED** to the extent it seeks a second individualized bond hearing before an immigration judge.

2.  Respondents shall provide Petitioner with a second individualized bond hearing before an immigration judge. At that hearing, the Government shall bear the burden of proving, by clear and convincing evidence, that Petitioner's continued detention is necessary because Petitioner poses a danger to the community or a risk of flight or both.

3.  The bond hearing shall include an individualized determination of whether continued detention remains justified. The immigration judge shall state the reasons for the custody determination orally on the record or in writing. If bond is denied, the IJ shall identify the principal facts and evidence relied upon in determining that Petitioner poses a danger to the community, a flight risk, or both. Nothing in this Order requires the immigration judge to reach any particular custody determination.

4.  The Government shall arrange for an individualized bond hearing to be conducted by an immigration judge by <u>Monday, June 15, 2026</u>.

5.  If Petitioner is not provided with a bond hearing by <u>Monday, June 15, 2026</u>, or if the immigration judge declines jurisdiction or denies eligibility for a bond hearing based on

*Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), or the statutory interpretation of Section 1225(b)(2) that this Court has rejected, Respondents shall immediately release Petitioner from custody.

6. If Petitioner is granted bond and the Government appeals the immigration judge's decision on the basis that Petitioner's detention is mandatory under 8 U.S.C. § 1225(b)(2), then, upon notification to this Court, the writ shall issue and Petitioner shall be automatically released from custody.

7. The parties shall provide notice to the Court of the outcome of the individualized bond hearing within seven days of the date of the immigration judge's decision.

8. With no further action required by the Court at this time, the Clerk of Court shall mark this matter closed.

Stephanie L. Haines
United States District Judge

10